IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

SARAH NOCELLA,

                              Plaintiff,                    Case No. 3:04 CV 7447

    -vs-

                                                                    MEMORANDUM OPINION

BASEMENT EXPERTS OF AMERICA,

                              Defendant.

KATZ, J.

This matter is before the Court on a motion for summary judgment filed by Defendants Basement Experts of America, Inc. and James Quigley, III (collectively, "Defendants"). Doc. 60.

**I. Background**

Defendant Basement Experts employed Plaintiff Sarah Nocella at its Maumee, Ohio facility on December 9, 2002 until her termination on October 24, 2005. Plaintiff notified Defendants that she was pregnant in January of 2005. On July 15, 2005, Plaintiff, nearing her delivery date (the baby was born on July 23, 2005), began a period of leave protected by the Family Medical Leave Act ("FMLA"). She requested 10 weeks, which would have set her return date for September 28, 2005.

When she began her protected leave, Plaintiff was the facility's Office Manager. Her duties in that capacity included supervising other employees, including Rebecca Potts and Shelly Timofeev, whom Plaintiff also played a part in interviewing and hiring. Plaintiff also claims to have had supervisory duties over certain employees in the company's Detroit area, Grand Rapids, and St. Louis offices, but that fact is disputed. A portion of Plaintiff's duties (described both as

25% and as "a very small part") was to serve as an assistant to her immediate supervisor, Kraig Mackett. Doc. 63 at 4; Doc. 70 at 4. While Plaintiff was on leave, Mackett resigned his employment with Basement Experts. Quigley decided not to hire a replacement for Mackett and to absorb most of Mackett's work himself. Meanwhile, Plaintiff's duties were being handled by Potts and Timofeev, both of whom Plaintiff had instructed and trained before beginning her leave period.

On September 19, 2005, Defendant Quigley sent Plaintiff a letter informing her that, due to Mackett's resignation and the decision not to hire a replacement, her position as Office Manager was also terminated. This arrangement was convenient for the company because Potts and Timofeev continued to perform the other approximately 75% of the duties of the position of Office Manager that did not involve assisting Mackett. The letter indicated that Defendants would locate another position for her upon her return. The letter further instructed Plaintiff to return to work at the expiration of 12 weeks, instead of the earlier-determined 10 weeks, stated and incorrectly measured as October 18, 2005. Twelve weeks after July 15 would have been October 7, 2005. Nevertheless, Plaintiff was asked to wait and she returned to the facility on October 17, 2005, more than 13 weeks after her leave began on July 15, but only after attempting to return to work but being prevented from doing so on October 3, 2005.

When Plaintiff returned to work, she was assigned a project under the company controller that involved reviewing all of the company's employees' records to ensure compliance with an October, 2005 investigation by the U.S. Department of Labor that found Basement Expert employee records to be lacking the required I-9 information. The job involved working in the accounting department backroom without access to a computer or phone at her desk.

2

On Thursday October 20, 2005, only her fourth day back from leave, Plaintiff had an emotional experience at work. First, she received a letter from Quigley explaining the importance of the I-9 compliance project and explaining why it was imperative that she perform her work in the accounting department instead of at her former workspace. Plaintiff testified that Quigley's assistant told her that "people were going to start losing their jobs" if Plaintiff tried to work at her former desk instead of the accounting department desk. Upset and dissatisfied with the way she felt the company had been treating her since her leave period, Plaintiff left work to see her father. Defendants claim that Plaintiff was seen crying, shredding a few documents (which Plaintiff denies), and gathering some personal items from her desk before leaving.

Plaintiff came to work the next day, Friday, October 21, 2005, but Quigley's assistant informed Plaintiff that Quigley wanted Plaintiff to go home and return to meet with him on Monday at 11:00 AM. On Monday, October 24, 2005, Plaintiff met with Quigley, Quigley's assistant, and another employee. Plaintiff denied shredding documents. Defendant Quigley then fired Plaintiff. Quigley testified to the reasons for the firing as follows: "Because she was observed shredding some documents," "Because she completed zero work during that week, and if she did, it was missing," and "Because she, as far as I was concerned, had quit on Thursday and walked out with all her personal stuff." Quigley Dep. at 10; Doc. 63 at 12. Plaintiff and Quigley's assistant testified that Plaintiff's personal belongings that were left at work were later mailed to her by Quigley's assistant. Doc. 63 at 12; Nocella Dep. at 147; Spencer Dep. at 26-27.

Plaintiff filed this lawsuit on November 28, 2005, claiming that Defendants violated her rights under the FMLA, 29 U.S.C. § 2601, as well as Ohio's pregnancy protection statute, Ohio Rev. Code § 4112.99, and Ohio public policy. Defendants filed for summary judgment April 13,

3

2007. For the reasons enumerated herein, Defendants' motion for summary judgment is hereby granted in part, and denied in part. Doc. 60.

**II. Summary Judgment**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

**III. Discussion**

    **A. FMLA reinstatement and entitlement**

"The FMLA 'accommodates the important societal interest in assisting families by establishing minimum labor standard[s] for leave.' H.R.Rep. No. 103-8(I), 103d Cong., 1st Sess.1993, at *21." *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003). The FMLA provides that

5

>an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following:
>
>>(A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter.

29 U.S.C. § 2612(a)(1). Furthermore,

>any eligible employee who takes leave under section 2612 of this title for the intended purpose of the leave shall be entitled, on return from such leave–
>
>>(A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or
>>
>>(B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

29 U.S.C. § 2614(a)(1). An "equivalent position" under 29 U.S.C. § 2614(a)(1)(B) is

>one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status. It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority.

The FMLA does not entitle an employee to "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3)(B).

To prevail on her FMLA entitlement claim, Plaintiff must show that (1) she was an eligible employee; (2) Defendant was an employer covered by the FMLA; (3) Plaintiff was entitled to leave under the FMLA; (4) she gave her employer notice of her intent to leave; and (5) the employer denied her FMLA benefits or interfered with FMLA rights to which Plaintiff was entitled. *Cavin*, 346 F.3d at 719.

6

Defendants concede that Plaintiff was an employee eligible for FMLA leave, Basement Experts is a covered employer, Plaintiff was entitled to FMLA leave, and Plaintiff gave Defendants notice of her intent to take leave due to her pregnancy. The issue is whether Defendants denied or interfered with Plaintiff's right to reinstatement "to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1)(B). Defendants argue that Plaintiff was not entitled to reinstatement, and in any case Plaintiff was reinstated to a position equivalent to her previous position until being fired for unrelated work-performance reasons.

Defendants argue that they were under no obligation to return Plaintiff to work because her position was eliminated while she was on leave.

Defendant cites to the following FMLA regulation:

> If an employee is laid off during the course of taking FMLA leave *and employment is terminated*, the employer's responsibility to continue FMLA leave, maintain group health plan benefits and restore the employee cease at the time the employee is laid off, provided the employer has no continuing obligations under a collective bargaining agreement or otherwise. An employer would have the burden of proving that an employee would have been laid off during the FMLA leave period and, therefore, would not be entitled to restoration.

29 C.F.R. § 825.216(a)(1)(emphasis added). During Plaintiff's leave, Defendants made a decision to eliminate her position. They informed her of that decision during her leave period, but at the same time instructed her to return to work after her FMLA leave period. Plaintiff was neither fired nor laid off; her job title was merely eliminated. Defendants were therefore never relieved of their duty to reinstate Plaintiff to an equivalent position.

Even if Plaintiff was laid off and her employment was terminated by the September 19, 2005 letter, Defendants have not met their burden of showing that Plaintiff would have been laid

7

off had she not taken her FMLA leave. There is a genuine issue of material fact as to the reason for the elimination of Plaintiff's position. Defendants claim that Plaintiff's position was eliminated because Mackett resigned, Quigley took on Mackett's workload, and Potts and Timofeev took on Plaintiff's workload. Work that came from Mackett constituted only about 25% of Plaintiff's workload as office manager. The rest of her work was distributed to Potts and Timofeev in Plaintiff's absence, and it was during that absence that Plaintiff's position, as opposed to Potts' or Timofeev's, was eliminated. The essential question is why Plaintiff's position, as opposed to that of Potts or Timofeev, who worked under Plaintiff's supervision, was the one that was eliminated. The only reason Potts and Timofeev were doing Plaintiff's work was because she was on leave. Defendants have not advanced any reasons why Plaintiff's position, specifically, was eliminated as opposed to Potts' or Timofeev's, besides to say that a portion of Plaintiff's work came from Mackett. Both Potts and Timofeev received work from Plaintiff, but their positions were not eliminated when hers was. The circumstantial evidence indicates that there is a genuine issue as to whether Plaintiff's position was eliminated because Mackett left or because, quite simply, Plaintiff was on leave when Mackett left. *See Donahoo v. Master Data Center*, 282 F.Supp.2d 540, 553-54 (E.D. Mich. 2003) (finding genuine issue of material fact where employer's motivations were unclear when two of three similar positions, including the plaintiff's, were eliminated or re-assigned while the plaintiff was on leave).

Defendants further argue that the I-9 review position was "equivalent [with regard to] benefits, pay, and other terms and conditions of employment" as compared to her previous office manager position. 29 U.S.C. § 2614(a)(1)(B). Defendants' definition of equivalency is based on the fact that both positions were "administrative/clerical" and received the same level of pay and

8

benefits. Additionally, after returning, Plaintiff "worked in the same office building, [worked] during the same hours, and [] was performing substantially similar administrative tasks." Doc. 60 at 14. Equivalency requires that the post-leave position "involve substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority." 29 U.S.C. § 2614(a)(1)(B). There is a genuine issue of material fact as to whether Plaintiff's position entailed a substantially equivalent level of responsibility and authority. Considering the facts in the light most favorable to the Plaintiff, as this Court must, there appears to be a considerable difference in authority between the office manager position, which had oversight over two local subordinate positions and other positions at the company's branch offices, and the I-9 review position, which had no such authority over or responsibility for any other employee. She was moved from the middle of a chain of command to the bottom of another. That she was also performing "administrative/clerical" work in the same building for the same number of hours is hardly a standard by which "equivalency" can be measured. *See Donahoo v. Master Data Center*, 282 F.Supp.2d at 552 (Similarity between pre- and post-leave positions in pay and benefits does not constitute equivalency where "the two positions were not equivalent in terms of status: a data-entry job is not as sophisticated, nor does it require a similar level of training and education, as a computer analyst.").

For these reasons, Defendants' motion for summary judgment with regard to reinstatement and entitlement under the FMLA is denied.

**B. FMLA retaliation and discrimination**

9

Congress has prohibited employers from discharging or otherwise discriminating against employees who exercise their rights under the FMLA. 29 U.S.C. § 2615(a)(2) & (b). The FMLA, 29 U.S.C. § 2615, provides in pertinent part:

> (a) Interference with rights
> (2) Discrimination
> It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.
> (b) Interference with proceedings or inquiries
> It shall be unlawful for any person to discharge or in any other manner discriminate against any individual because such individual--
> (1) has filed any charge, or has instituted or caused to be instituted any proceeding, under or related to this subchapter;
> (2) has given, or is about to give, any information in connection with any inquiry or proceeding relating to any right provided under this subchapter; or
> (3) has testified, or is about to testify, in any inquiry or proceeding relating to any right provided under this subchapter.

To prove retaliation using indirect evidence under the FMLA, the Sixth Circuit applies the burden shifting paradigm from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir.2001). To establish a prima facie case, a plaintiff must show that (1) the plaintiff availed herself of a right protected under the FMLA; (2) the employer knew about the exercise of protected rights, (3) the plaintiff was adversely impacted by an employment decision; and (4) there exists a causal connection between the two actions. *Id*. at 314. If a plaintiff establishes a prima facie case, a presumption of discrimination exists unless the employer can articulate some legitimate, nondiscriminatory reason for the adverse employment action. *McDonnel Douglas*, 411 U.S. at 802. If the employer articulates a neutral justification for the employment action, the burden of production shifts back to the plaintiff to show that the justification was a pretext for unlawful discrimination. *Id.*

10

Defendants admit the first three elements of a prima facie retaliation case, but dispute that there was a causal connection between the protected activity and the adverse employment action.

> The prima facie evidentiary burden for demonstrating a causal connection between an employee's FMLA leave and termination is "minimal," and courts are expected to "draw reasonable inferences" from any credible evidence put forth by the plaintiff. *Nguyen v. City of Cleveland*, 229 F.3d 559, 565-66 (6 Cir.2000) (citing *EEOC v. Avery Dennison*, 104 F.3d 858, 861 (6 Cir.1997)). Causation may be inferred from indirect or circumstantial evidence, such as temporal proximity between protected leave and adverse action. *See, e.g., Skrjanc*, 272 F.3d at 314. The Sixth Circuit has, in some recent cases, suggested that temporal proximity must be coupled with some evidence of retaliatory conduct before any connection may be inferred. *See, e.g., Nguyen v. City of Cleveland*, 229 F.3d 559, 566-67 (6 Cir.2000); *Parries v. Makino*, 122 Fed.Appx. 826, 827 (6th Cir.2004). However, the Sixth Circuit has declined to specify precisely how much additional evidence is required. *See Nguyen*, 229 F.3d at 567. Moreover, there are other recent employment retaliation cases, including FMLA cases, indicating that temporal proximity alone may support an inference of causal connection. *See, e.g., Skrjanc*, 272 F.3d at 314; *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555 (6 Cir.2004); *DiCarlo v. Potter*, 358 F.3d 408, 421 (6 Cir.2004); *Ford v. General Motors*, 305 F.3d 545, 554-55 (6 Cir.2002).

*Dage v. Time Warner Cable*, 395 F.Supp.2d 668, 676 (S.D. Ohio 2005). *See also Mueller v. J.P. Morgan Chase & Co.*, 2007 WL 915160 at \*17 (N.D. Ohio 2007). Temporal proximity may not be enough on its own to establish a causal connection, as courts seem to indicate that more is required to make a showing of causation. "A causal link can be shown by either of two methods: (1) through direct evidence; or (2) through knowledge coupled with a closeness in time that creates an inference of causation." *Parnell v. West*, 1997 WL 271751, \*2 (6th Cir. 1997). In *Parnell*, the Circuit noted that

> the time lag between Parnell's protected activity and the adverse employment action in this case was seven months. A time lag of seven months does not necessarily support an inference of a causal link; previous cases that have permitted a prima facie case to be made based on the proximity of time have all been short periods of time, usually less than six months.

11

*Id*. at \*3. *See also DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004).

The temporal proximity of Plaintiff's return from leave to her firing was notably close – about a week. Even the time lapse from the beginning of Plaintiff's leave until the elimination of her position was only 8-9 weeks at most, and only about 5 weeks elapsed between the elimination of her position and her permanent firing. The facts here do not span a very long period of time at all. In addition to the temporal proximity of about a week, there were other factors that support the inference of a causal link. Defendants sent Plaintiff a letter suspending her return from work for two weeks longer than originally agreed and one week longer than even permitted by FMLA. Defendants had knowledge that Plaintiff intended to return to work after her leave, and they exchanged specific dates about her return. When Plaintiff sought to return to work on October 3, 2005, right around the expiration of the 12-week period permitted by FMLA, Defendants rejected her attempts to return. When Plaintiff came to work on Friday, October 21, after her emotional Thursday, Defendants turned her away from the workplace. These incidents constitute knowledge; they were attempts to keep Plaintiff from returning to work, and they occurred within a very small period of temporal proximity surrounded on one end by Plaintiff's exercise of protected action under FMLA and on the other end by Defendants' termination of Plaintiff. An inference of causation is thereby established, and a prima facie case of retaliation exists.

Defendants advance as a legitimate, nondiscriminatory reason for firing Plaintiff that she left work early and without notice on Thursday, October 24, 2005; was reported to have shred documents; and other employees were unable to locate her work. Doc. 60 at 20. Plaintiff argues that those reasons were pretext.

To establish pretext, a plaintiff may meet her burden by showing that the adverse employment action: (1) had no basis in fact; (2) was insufficient motivation for the employment action; or (3) did not actually motivate the adverse employment action. *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994).

Plaintiff shows the existence of material facts with regard to each of the stated reasons for her termination and for each of the *Manzer* methods. Plaintiff testified that she verbally denied shredding any documents in the Monday termination meeting, but Defendants fired her anyway. This, Plaintiff submits, is evidence that the shredding reason had no basis in fact, was insufficient motivation, and did not actually motivate her firing. Plaintiff further argues that the inability to locate her work is insufficient, that she did in fact work and make progress on the I-9 investigation, and that she did not quit on Thursday, October 20, which should have been obvious by her leaving personal items at work and her attempt to return to work on the following day. While this Court does not sit in judgment over business decisions, it is clear that there are genuine issues of fact as to the legitimacy of the reasons advanced by Defendants for Plaintiff's termination. This conclusion is even clearer when the Court takes into consideration the instructions of the Sixth Circuit to consider as indirect evidence of pretext the temporal proximity of the protected action to the adverse employment action. *Asmo v. Keane, Inc.*, 471 F.3d 588 (6th Cir. 2006) ("[T]emporal proximity can be used [as] "indirect evidence" to support an employee's claim of pretext.") (citing *DiCarlo*, 358 F.3d at 421). "All of this evidence taken together, considered under a summary judgment standard where [the Court] evaluate[s] all evidence in the light most favorable to [Plaintiff], indicates that [Defendants'] stated reasons for terminating [Plaintiff] were pretext for discrimination." *Asmo*, 471 F.3d at 598.

For these reasons, Defendants' motion for summary judgment with regard to retaliation and discrimination under the FMLA is denied.

### C. Ohio pregnancy protection law

Discrimination actions brought under state law are to be analyzed using the Title VII approach discussed supra. *See* Ohio Rev. Code § 4112; *Joint Apprenticeship Committee v. Ohio Civil Rights Commission*, 66 Ohio St.2d 192 (Ohio 1981).

Because Plaintiff's claim presents genuine issues of material fact when analyzed under the federal law as discussed above, Defendants' motion for summary judgment is also denied with regard to the state law discrimination claim.

### D. Ohio public policy

Ohio courts "do not recognize a cause of action for wrongful discharge in violation of public policy when the cause of action is based solely on a discharge in violation of the FMLA." *Wiles v. Medina Auto Parts*, 96 Ohio St.3d 240, 249 (Ohio 2002); *Cavin*, 138 F.Supp.2d 987 (S.D. Ohio 2001).

The cause of action before this Court is based solely on a violation of FMLA as far as this Court is concerned, because if it were not for the FMLA cause of action, this Court would have no subject matter jurisdiction in this case. Additionally, it is a rare instance in which a plaintiff brings a claim for violation of FMLA without also bringing a claim for a violation of comparable state law. To find that a public policy tort could exist where there is an FMLA claim in addition to a state claim that applies the same law and arises out of the same incidents as the FMLA claim would be to render the Ohio Supreme Court's opinion in *Wiley* practically without teeth. Finally, disallowing a public policy tort claim in this case comports with the *Wiley* court's reasoning:

14

> "If the statute that establishes the public policy contains its own remedies, it is less likely that tort liability is necessary to prevent dismissals from interfering with realizing the statutory policy." 2 Perritt at 71, Section 7.26. Simply put, there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests. *See Ross v. Stouffer Hotel Co. (Hawaii) Ltd., Inc.* (1994), 76 Haw. 454, 464, 879 P.2d 1037; *Erickson v. Marsh & McLennan Co., Inc.* (1990), 117 N.J. 539, 562, 569 A.2d 793; *Kofoid v. Woodard Hotels, Inc.* (1986), 78 Ore.App. 283, 286-287, 716 P.2d 771, citing *Walsh v. Consol. Freightways* (1977), 278 Ore. 347, 563 P.2d 1205. In that situation, the public policy expressed in the statute would not be jeopardized by the absence of a common-law wrongful-discharge action in tort because an aggrieved employee has an alternate means of vindicating his or her statutory rights and thereby discouraging an employer from engaging in the unlawful conduct.
>
> \*\*\*
>
> When viewed as a whole, the FMLA's remedial scheme provides an employee with a meaningful opportunity to place himself or herself in the same position the employee would have been absent the employer's violation of the FMLA. For example, if Wiles had pursued a cause of action based on the FMLA and prevailed, he could have obtained (1) compensatory damages for the salary he lost following his demotion, (2) liquidated damages in a like amount if Medina Auto Parts could not prove that it acted in good faith, (3) prejudgment interest, (4) reasonable attorney fees, and (5) appropriate equitable relief, including front pay and/or reinstatement to the managerial position he held prior to taking his FMLA leave. This combination of compensatory damages and equitable remedies is sufficiently comprehensive to ensure that the public policy embodied in the FMLA will not be jeopardized by the absence of a tort claim for wrongful discharge in violation of public policy. . . . Indeed, a number of federal courts have cited the adequacy of the statutory remedies as a reason not to extend state law and recognize a claim for wrongful discharge based on the public policy of the FMLA. *See Cavin v. Honda of Am. Mfg., Inc.* (S.D.Ohio 2001), 138 F.Supp.2d 987, 997-998, and *Dorricott v. Fairhill Ctr. for Aging* (N.D.Ohio 1998), 2 F.Supp.2d 982, 992, affirmed without published opinion (C.A.6, 1999), 187 F.3d 635 (applying Ohio law). . .; *Lange v. Showbiz Pizza Time, Inc.* (D.Kan.1998), 12 F.Supp.2d 1150, 1155 (applying Kansas law); *McClain v. Southwest Steel Co.* (N.D.Okla. 1996), 940 F.Supp. 295, 298 (applying Oklahoma law); *Hamros v. Bethany Homes & Methodist Hosp.* (N.D.Ill. 1995), 894 F.Supp. 1176, 1179 (applying Illinois law).

For these reasons, and especially in light of *Wiley*, this Court finds that the state law tort for discharge in violation of public policy is not available in a case where the sole federal claim is an FMLA claim and the sole state claim arises from the same set of specific facts and applies the

15

same law.[1]  Therefore, Plaintiff Nocella has no public policy claim, and summary judgment is granted in favor of Defendants on Plaintiff's public policy tort claim.

**IV. Conclusion**

Defendants' motion for summary judgment (Doc. 60) is hereby granted in part, and denied in part.  It is granted with regard to Plaintiff's claim of discharge in violation of public policy.  It is denied with regard to Plaintiff's claims for reinstatement and retaliation under the FMLA and retaliation under Ohio's pregnancy discrimination laws.

IT IS SO ORDERED.

  s/ *David A. Katz*
 DAVID A. KATZ
 U. S. DISTRICT JUDGE

---

[1] The Court notes that, in light of the fact that *Wiley* was a plurality decision and that the text of the *Wiley* holding applies to claims brought "only" under the FMLA, the state of the law on this issue specifically is in flux.  *See, e.g., Mercurio v. Honeywell*, 2003 WL 966287 at *3 (S.D. Ohio 2003); *Gessner v. Union*, 159 Ohio App.3d 43, 2004-Ohio-5770 (Ohio App. 2d Dist. 2004); *Leininger v. Pioneer Nat'l Latex*, 2006 WL 1461239, 2006-Ohio-2673 (Ohio App. 5th Dist. 2006).  However, for the reasons stated above, the Court finds that the current state of the law is most supportive of the Court's holding herein.

16